FILED'08 AUG 15 1457 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEFFERY DRING,

        Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner, Social Security Administration,

        Defendant.

Civil No. 07-6179-CL

REPORT AND RECOMMENDATION

CLARKE, Magistrate Judge.

      Plaintiff Jeffery Dring brings this action pursuant to section 205(g) of the Social Security Act, as amended (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income benefits. For the several reasons set forth below, the decision of the Commissioner should be reversed and remanded for further administrative proceedings.

## **BACKGROUND**

Plaintiff applied for disability insurance benefits and supplemental security income alleging disability commencing October 25, 2004. His applications were denied. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on September 19, 2006. Plaintiff, represented by counsel, appeared and testified, as did a vocational expert . The ALJ rendered an adverse decision, and the Appeals Council denied plaintiff's request for review after considering new evidence submitted by plaintiff.

At the time of the ALJ's decision, plaintiff was thirty-nine years old. Plaintiff completed the eleventh grade but has not earned a GED. He has relevant past work experience as an assembler, forklift operator, and painter's helper. Plaintiff alleges disability as of October 25, 2004, based upon severe degenerative disc disease. The relevant medical evidence is discussed below.

## **STANDARDS**

This court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). The court considers the record as a whole, and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the

Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Secretary of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

3 - REPORT AND RECOMMENDATION

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period under review. (Tr. 19.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled. If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). In the instant case, the ALJ found that plaintiff's degenerative disk disease of the lumbar spine is a severe impairment. (Tr. 19.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Tr. 20.)

4 - REPORT AND RECOMMENDATION

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work." If the claimant is so able, then the Commissioner finds the claimant "not disabled." Otherwise, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week. Social Security Regulation (SSR) 96-8p. The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. Id. In this case, the ALJ found that plaintiff could perform his past relevant work as an assembler as it is generally performed in the nation. (Tr. 21-22.) However, the ALJ went on to address step five of the analysis.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. Here, the ALJ found that plaintiff retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. (Tr. 22.) Therefore, the ALJ found that plaintiff was not under a disability. (Tr. 16, 23.)

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is unsupported by substantial evidence and because it is based on improper legal standards. Plaintiff

5 - REPORT AND RECOMMENDATION

argues that the ALJ erred by:  (1) not giving sufficient reasons to reject the opinion of his treating physician, Catherine Gallo; (2) not giving sufficient reasons to discredit his complaints; and (3) not finding that plaintiff meets or equals Listing 1.04; and that the Commissioner erred by (4) not giving sufficient reasons to reject the opinion of his treating physician, Donna Morgan; and (5) not addressing the opinion of an examining physician, John R. Reichle, M.D., that he could not work.

### Listing 1.04

Although plaintiff addresses this argument as his last argument, the Court will address it first since, if the record shows that plaintiff meets the Listing, he would be presumptively disabled and entitled to an award of benefits.  Plaintiff contends that his condition meets Listing 1.04 Disorders of the Spine, specifically Listing 1.04A.  Defendant responds that plaintiff offered no evidence at the hearing to show medical equivalence to a listing and offers only a generalized assertion that his condition is medically equivalent to Listing 1.04A.  Plaintiff makes no argument in his Reply as to this ground for relief.

Listing 1.04 provides:

*Disorders of the spine*  (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
With:
A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or

6 - REPORT AND RECOMMENDATION

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404, App. 1.

An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).  It appears from plaintiff's contentions that he is contending that he meets each of the elements of Listing 1.04A, and is not contending that his condition is medically equivalent to the Listing.

It is clear from the record that plaintiff has degenerative disc disease—the ALJ so found (Tr. 19)--and that this may result in compromise of a nerve root (Tr. 241, infra).

Plaintiff contends that he has nerve root compression and neuro-anatomic distribution of pain, citing an October 10, 2006, CT of his lumbar spine (Tr. 241-42) and Dr. Catherine Gallo's September 14, 2006, neurosurgical consultation report (Tr. 230). The CT findings included a relevant finding that, at L5-S1, there was "A moderate size right paracentral disc protrusion is present [and] The disc protrusion abuts and causes mild posterior displacement of the right S1 nerve root."  Dr. Angela Beckes' impression was, "Moderate right paracentral disc protrusion L5-S1 abutting and mildly displacing the right S1 nerve root origin." (Tr. 241.) Dr. Gallo stated in her September 14, 2006, neurosurgical

7 - REPORT AND RECOMMENDATION

consultation report that plaintiff's chief complaint was persistent low back pain radiating

to both legs, right greater than left.  Plaintiff had a deep ache across his low back that

radiated to both buttocks and continued posterior down his legs to his feet, and the right

leg was worse than the left.  Dr. Gallo referred to a recent lumbar MRI study which showed

disc desiccation and mild concentric bulging at L34, L45 and L5S1, and there were no areas

of significant disc herniation and lumbar alignment was anatomic.  As to electrodiagnostic

studies, Dr. Gallo stated:

> Due to the multilevel nature of his degenerative process on MRI, he had
> small-pain-fiber electrodiagnostic testing done today to try to identify his pain
> generators.  This showed very severe impairments in the right S1 and left L5
> distributions as well as severe impairment in the left S1 and marked in the
> left S2.  However he also had very severe impairment in the left L3, and
> more moderate impairments in the left L2, right L3, as well as both L4's,
> suggesting that although L5S1 may be his main pain generator, L34 and L45
> may be playing a significant part as well.

(Tr. 230.)  Dr. Gallo's impression was "lower back and bilateral leg radicular pains with

numbness in S1 distribution bilaterally and in L5 on the right, likely due in main part to

internal disc disruption at L5S1 although his other levels may be playing a part as well"

(Tr. 230).  (Tr. 227-30.)

Plaintiff refers to Dr. Gallo's September 2006 report (Tr. 229) and to Dr. John R.

Reichle's report (Tr. 265) to show he has limitation of motion of the spine.[1]  Dr. Gallo found

---

[1]    Dr. Reichle's report was not before the ALJ.  It was submitted to the Appeals Council
after the ALJ's decision.   However, this Court must consider the entire administrative record,
including the decision of the ALJ and the additional material submitted to the Appeals Council,
in reviewing the Commissioner's finding of not disabled. Ramirez v. Shalala, 8 F.3d 1449, 1452
(9th Cir. 1993).

on examination that plaintiff could flex to about 45 degrees with poor lumbar reversal, which was moderately painful. (Tr. 229.) Dr. Reichle conducted a pain center evaluation of plaintiff on March 8, 2007. (Tr. 262-67.) As to range of motion of the lumbar spine, plaintiff's flexion was 30 degrees, extension 8 degrees, tilting to the right 16 degrees and left 18 degrees. Dr. Reichle found: "Cervical spine shows normal full range of motion with negative Spurling sign." (Tr. 265.)

In support of motor loss, plaintiff refers to Dr. Gallo's September 2006 report (Tr. 227), in which Dr. Gallo, in setting out plaintiff's comprehensive history, stated that, "Both legs often give out on him."

Plaintiff contends that he has sensory loss, referring to a letter to Brian Jones, M.D., from Scott H. Kitchel, M.D., who examined plaintiff in November 2004 (Tr. 177), and Dr. Gallo's September 2006 report (Tr. 227). In setting out the history of plaintiff's illness, Dr. Kitchel states that plaintiff has had "some numbness and tingling in both legs," although he notes plaintiff has not had any real leg weakness. (Tr. 177.) And Dr. Gallo states in the history portion of her report that plaintiff had numbness across his low back and into his buttocks with both great toes intermittently numb. (Tr. 227.)

Plaintiff refers to Tr. 185, which is Dr. Gallo's April 11, 2005, neurosurgical initial consultation, in support of his contention that he has positive straight leg raising test result. Dr. Gallo's report states in pertinent part that, on examination of plaintiff's extremities, "SLR" was "pos @ 90" on both the right and the left. (Tr. 185.) The Court

notes that Dr. Jones' chart note of plaintiff's August 16, 2006, visit state that straight leg raising was positive on the right.  (Tr. 218.)

However, the Court is not satisfied that the evidence cited above shows that plaintiff meets or is medically equal to Listing 1.04A.  The evidence does not clearly show that plaintiff meets the Listing, and there is no opinion by a physician in the record to this effect.  It is noteworthy that the record does not include a report by a physician who has considered whether plaintiff's condition meets or is equivalent to a listed impairment.  No medical expert was called to testify at the hearing in this matter.  The Court notes that  to meet Listing 1.04A, it must be shown that positive leg raising test be positive in the sitting and the supine position.  The only evidence the Court is aware as to a sitting straight leg test was negative.  (Tr. 265.)

**Physician's Opinion – Catherine Gallo, M.D.**

Plaintiff asserts that the ALJ's rejection of Dr. Gallo's opinion that plaintiff cannot work due to extreme pain was legally insufficient and, if there was any doubt about her opinion, the ALJ had a duty to contact Dr. Gallo for clarification.  Defendant contends that the ALJ properly evaluated the medical evidence.

Generally, the Commissioner gives more weight to the opinion of a treating source or examining source than to a source who has not treated or examined a claimant.  20 C.F.R. §§ 404.1527(d)(1)(2), 416.927(d)(1)(2); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  A treating physician is one who is employed to cure.  Magallanes, 881 F.2d at 751.  His opinion is given more

weight because he has a greater opportunity to know and observe the patient.  Id. Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record.   20 C.F.R. §§ 404.1527(d)(2), 416.926(d)(2).   "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes, 881 F.2d at 751 (citing  Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Sec'y of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ chooses to disregard a treating physician's or an examining physician's opinion, and that opinion is not contradicted by another doctor, he must set forth clear and convincing reasons for doing so. Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).   If a treating or examining physician's opinion is contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons, based on substantial evidence in the record, for disregarding the opinion of the treating or examining physician.  Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th Cir. 1996). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting medical evidence, then stating his interpretation, and making findings.  Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); Rodriguez, 876 F.2d at 762.  Further, the opinion of an examining

physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830.

Plaintiff underwent a neurosurgical initial consultation with Catherine J. Gallo, M.D., on May 22, 2000. Plaintiff complained of low back and left leg radicular pain following a March 29, 2000, work injury. Plaintiff felt that his progress toward improvement had plateaued. At the time of the examination, plaintiff reported intermittent, sharp shooting pain down the center of the left thigh and calf; a constant, achy left-sided low back pain; numbness and tingling in the left lateral calf, and the dorsum and small toes of the left foot. Upon physical examination, straight leg raising was negative; he was tender in the midline at the L5S1 level, and could only flex to about 30 degrees  by walking down his thighs with his hands, and he had no lumbar reversal. Somatic sensory examination was intact with the exception of "decreased" on the left at S1. Motor examination and reflexes showed normal findings. Dr. Gallo noted that there was no embellishment or pain behavior. A recent lumbar MRI study revealed multilevel disc degeneration from L3/4 to L5/SI, with central bulging at all three levels, eccentric to the left at L3/4 and eccentric to the right at L5/SI; high signal in the posterior disc capsule on T-2 weighted images at both L4/5 and L5/S1; and lumbar alignment was unremarkable. Dr. Gallo noted that plaintiff guarded his low back carefully and had an antalgic limp on the left leg.[2] Dr. Gallo's impression was that plaintiff's radicular symptoms and numbness were both S1 in

---

[2]    "Antalgic" or "analgesic" in this context means, "Characterized by reduced response to painful stimuli," Stedman's Medical Dictionary (28th ed. 2006); "Relieving pain" or "Not sensitive as to pain," Dorland's Illus. Medical Dictionary (24th ed. 1965).

distribution, and she suspected L5/S1 at the pain generator; and he had no left-sided nerve root impingement at that level, so she did not think that plaintiff was a candidate for limited discectomy for pain relief. Dr. Gallo did not think that plaintiff could do his present job since it required heavy lifting on a repetitive basis, but thought plaintiff would benefit from vocational counseling so that his job did not require repetitive lifting in excess of fifty pounds. Plaintiff was to follow up with Dr. Gallo if he had any worsening of radicular symptoms. (Tr. 188-92.)

Dr. Gallo conducted another neurosurgical initial examination on April 11, 2005, for lower back and left leg radicular pain. Plaintiff complained of severe lower back pain with numbness, aching and stabbing pains radiating down into his left leg and foot. An October 2004 lumbar study showed disc bulging at L45 and L5S1. Plaintiff presented for surgical consultation. On physical examination, straight leg raising was "pos @ 90" on both the right and left. (Tr. 185.) Plaintiff had diffuse lower lumbar paraspinous tenderness with mild spasm; and he could only flex to about 45 degrees by walking down his thighs with his hands, and had no lumbar reversal. Dr. Gallo stated that there was no embellishment or pain behavior noted. Somatic sensory examination was intact with the exception of "decreased" on the left at L5; and motor examination and reflexes showed normal findings. Dr. Gallo noted that plaintiff guards his lower back and has an antalgic limp on the left leg with ambulation. A recent lumbar MRI study showed disc bulging at L34, L45, and L5S1, eccentric to the right; he had no obvious instability or scoliosis. Dr. Gallo's impression was lower back and left leg radicular pain due to multilevel lumbar disc degenerative disease

13 - REPORT AND RECOMMENDATION

and bulging.  Plaintiff felt he could not tolerate his pain and wanted to consider surgery.

Plaintiff was to have a repeat lumbar MRI study and follow up with Dr. Gallo regarding his

surgical options.  Dr. Gallo noted that plaintiff "may be a good candidate for internal

fixation with the new flexible fusion system," (Tr. 186).  (Tr. 184-87; 220-23.)

On April 11, 2005, Dr. Gallo wrote to Dr. Jones, informing him that plaintiff felt he

cannot tolerate his pain and would like to consider surgery, and that plaintiff would be

following up with her following his MRI study to discuss surgical options.  Dr. Gallo stated

that, "He may be a good candidate for internal fixation with the new flexible fusion

system."  (Tr. 195.)

Plaintiff saw Dr. Gallo for followup on April 25, 2005.  She noted that plaintiff's

repeat lumbar MRI study showed disc desiccation, decreased disc height and bulging from

L34 to L5S1; and that he had no obvious neurologic compression at any level and lumbar

alignment was unremarkable.  Dr. Gallo told plaintiff that the next step was provocative

discography to determine his pain generators, which he wanted to proceed with.  (Tr. 183,

219.)

Plaintiff saw Dr. Gallo for neurosurgical consultation on September 14, 2006.  His

chief complaint was persistent low back pain radiating to both legs, right greater than left.

Since his April 2005 consultation, he had elected conservative management of his pain

because his insurance did not cover the recommended discography.  His lumbar pain

remained between a 5 to 7 on a pain scale of 10.  Plaintiff had a deep ache across his low

back that radiated to both buttocks and continued posterior down his legs to his feet, and

the right leg was worse than the left.  Both legs often gave out on him. He had numbness

across his low back and into his buttocks.  His pain intensity depended on level of activity;

bending, twisting, and extended sitting or standing aggravated his pain.  On physical

examination, straight leg raising was negative.  He had diffuse lower lumbar tenderness

without spasm, and could flex to about 45 degrees with poor lumbar reversal, which was

moderately painful.  Dr. Gallo noted that there was no embellishment or pain behavior.

Somatic sensory examination was intact with the exception of "decreased" on the right for

L5 and on right and left for S1.  Motor examination and reflexes showed normal findings.

Dr. Gallo noted that plaintiff guarded his lower back but his gait was normal.  A recent

lumbar MRI study showed disc desiccation and mild concentric bulging at L34, L45 and

L5S1; there were no areas of significant disc herniation and lumbar alignment was

anatomic. As to electrodiagnostic studies, Dr. Gallo stated:

> Due to the multilevel nature of his degenerative process on MRI, he had
> small-pain-fiber electrodiagnostic testing done today to try to identify his pain
> generators.  This showed very severe impairments in the right S1 and left L5
> distributions as well as severe impairment in the left S1 and marked in the
> left S2.  However he also had very severe impairment in the left L3, and
> more moderate impairments in the left L2, right L3, as well as both L4's,
> suggesting that although L5S1 may be his main pain generator, L34 and L45
> may be playing a significant part as well.

(Tr. 230.)  Dr. Gallo's impression was "lower back and bilateral leg radicular pains with

numbness in S1 distribution bilaterally and in L5 on the right, likely due in main part to

internal disc disruption at L5S1 although his other levels may be playing a part as well."

(Tr. 230.)  Dr. Gallo thought plaintiff needed a lumbar disco/CT to confirm this.  Plaintiff

was going to have a disco/CT study done and follow up with Dr. Gallo for further discussion of surgical options. (Tr. 227-30.)

On October 30, 2006, following a lumbar discogram/CT study, (Tr. 235-38, 241-42), Dr. Gallo saw plaintiff for a follow-up visit. Dr. Gallo thought that the study showed that plaintiff "has painful internal disc disruption from L34 to L5S1." She told plaintiff that, "based on that study he is not a good candidate for arthrodesis for pain relief as he has too many symptomatic levels. He was not very happy to hear that as he cannot work due to his back pain."[3] Dr. Gallo recommended a pain management approach and referred plaintiff to Dr. Morgan. He was to follow up with Dr. Gallo if he had any neurological worsening. (Tr. 240.)

Plaintiff contends that Dr. Gallo's statements in her October 30, 2006, chart notes, above, "is an opinion by Dr. Gallo that due to extreme pain, Plaintiff cannot work." (Pl. Brief at 14.) In her decision, the ALJ addressed this statement of Dr. Gallo's as follows:

> The note from Dr. Gallo submitted after the hearing contains a statement that the claimant "was not very happy to hear that as he cannot work." It is not clear whether this was the doctor's opinion or the claimant's. In either case, it is not given significant weight as it is ultimately a vocational question and no actual limitations and activity are described.

(Tr. 21.) The Court agrees with the ALJ that the quoted statement is ambiguous in the sense that it is not clear whether the statement is an opinion of Dr. Gallo's or a statement of plaintiff's. In the Ninth Circuit, the independent duty to further develop the record is

---

[3] "Arthrodesis" means "The stiffening of a joint by operative means." Stedman's Medical Dictionary (28th ed. 2006).

triggered where the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002) (requirement for additional information "is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability."). Such a duty exists even where the claimant is represented by counsel. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). However, to the extent that the ALJ considered the statement as an opinion of Dr. Gallo's, the reasons given by the ALJ for discounting her opinion are insufficient. Although the determination of whether a claimant meets disability standards are reserved to the Commissioner, medical source opinions "must not be disregarded." SSR 96-5p. Therefore, the fact that the disability determination is ultimately a vocational question is not a valid reason for discounting Dr. Gallo's opinion. It is notable that the reference by the ALJ to Dr. Gallo's statement is included in the ALJ's discussion of plaintiff's credibility; in the discussion of the medical evidence, the ALJ does not mention Dr. Gallo, although she references certain portions of Dr. Gallo's records. The ALJ referenced only those portions of Dr. Gallo's reports and/or opinions which supported normal findings: straight leg raising tests have been negative; plaintiff's gait was normal; and a statement that "treating neurosurgeon has recommended against surgery" (Tr. 20). See discussion, supra. Significantly, Dr. Gallo found straight leg raising positive in both right and left in April 2005 (Tr. 185), and that plaintiff had an antalgic limp in the left leg upon examinations in May 2000 and April 2005 (Tr. 188-92;

17 - REPORT AND RECOMMENDATION

184-87; 220-23).[4]  The ALJ states in her conclusion of the medical evidence that there was no medical evidence entered in the record to show that the range of light exertional work endorsed by Drs. Jones and Curtin was misplaced.  However, as detailed above, Dr. Gallo found in September 2006 following electrodiagnostic studies that plaintiff had "very severe impairments" in the right S1 and left L5, "severe impairment" in the left S1 and "marked" in the left S2, "very severe impairment" in the left L3 and more moderate impairments in the left L2, right L3 and both L4's.  (Tr. 230).  Nor does the Court find that  the fact that no limitations and activity are described by Dr. Gallo a reason to discount Dr. Gallo's opinion, where her opinion is supported by multiple physical examinations and objective testing.  See 20 C.F.R. §§ 404.1527, 416.927.  Dr. Gallo's opinions are relevant to a disability determination.  The ALJ offered no reasons to disregard these opinions of Dr. Gallo, a treating doctor.  It appears to the Court that the ALJ picked and chose certain portions of the Dr. Gallo's reports while not discussing those portions that might support the severity of plaintiff's symptoms and any limitations.  In disregarding certain of her findings and opinions, the ALJ failed to give the required reasons for doing so.  Accordingly, the ALJ erred in his treatment of the opinions of Dr. Gallo.

## Plaintiff's Credibility

Plaintiff contends that the ALJ did not give sufficient reasons for discrediting his complaints.  Defendant contends that the adverse finding is supported.

---

[4] In Dr. Jones' August 2006 chart notes, he found on examination that straight leg raising was positive on the right; and that plaintiff walked with "an antalgic gait."  (Tr. 218.)

18 - REPORT AND RECOMMENDATION

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage is the Cotton test. Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986). Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering.

Plaintiff has produced objective evidence of impairments that could reasonably be expected to produce some degree of symptoms resulting in limitations. (Tr. 16, 21.) The ALJ did not find that plaintiff is malingering. Therefore, the analysis moves to a credibility determination.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms.    The Commissioner can reject a claimant's symptom testimony only if she makes specific findings, stating clear and convincing reasons for doing so. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Smolen, 80 F.3d at 1281-82. General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible.   Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings. Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . . Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284. Questions of credibility are reserved to the ALJ. Sample v. Schweiker, 694 F.2d 639, 942 (9th Cir. 1982) (and cases cited).

Here, the ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. She found that plaintiff's daily activities were inconsistent with disabling back pain. The ALJ found that plaintiff was the "primary caregiver" of his girlfriend's twins (Tr. 21); he performed his own self-care; he prepared meals, shopped for food, and assisted in performance of family chores; and he went outside daily, walked dogs every other day and walked up to one mile for exercise. At the hearing, plaintiff testified that he mostly did the outside chores, such as mowing the yard, but not too much weeding; he also trims the roses. (Tr. 319, 320.) The ALJ's statements are generally supported by the record, except for the statement that, "Foremost, [plaintiff] has been the primary caregiver of his girlfriend's two twins." (Tr. 21.) In each of the reports referenced by the ALJ, dated December 2004 and March 2005, both

plaintiff and his girlfriend, Tawnia Freeman, state that plaintiff "helps" Ms. Freeman get the twins ready for school in the morning. (Tr. 74, 82, 103.)

The ALJ found that plaintiff's inconsistent statements and actions further undermined his credibility. The ALJ found an inconsistency in the fact that plaintiff stated on a Claimant's Medication form dated July 10, 2006, that he took ibuprofen because he could not afford percocet or flexeril. (Tr. 120.) At the hearing on September 19, 2006 , plaintiff testified that he had insurance through his fiancé to cover the discogram procedure. (Tr. 318.) However, the record is not inconsistent with plaintiff's statement that he did not have insurance or adequate insurance at the time he made his statement that he could not afford prescription medications. Dr. Jones states in a February 2006 chart note that plaintiff "does not have insurance that would help him with potential surgery for that disc." (Tr. 203.) In April 2005, Dr. Gallo had told plaintiff that the next step was discography; on September 14, 2006, Dr. Gallo reported that, since the April 2005 consultation, plaintiff had elected conservative management of his pain because "Unfortunately his insurance did not cover this procedure." (Tr. 183, 219, 227.)   In an August 2006 chart note, Dr. Jones states:  "Dr. Gallo wanted to do some diagnostic studies to help determine where the pain was coming from but his insurance was not going to cover it, and now his new insurance I think will be beneficial in helping him to get treated." (Tr. 218.)  The record indicates that, when the cost of the discogram procedure was covered by insurance, plaintiff had the procedure done, in October 2006. The fact that

plaintiff did not have insurance Before August 2006 and at a later time had insurance is not

a clear and convincing reason to discredit plaintiff's complaints.

The ALJ pointed to statements made concerning whether he worked on cars or

mowed the lawn. In a statement made by plaintiff in a Function Report-Adult dated March

10, 2005,[5] he stated he no longer worked on his car and his girlfriend mowed the lawn.

(Tr. 104, 105.) At the hearing, plaintiff testified that he mostly did the outside chores, such

as mowing the yard, but not too much weeding. (Tr. 319. 320.) He also stated that, as

to car work, he tried to do what he could, but there's been quite a few times when he

couldn't finish the job and he had to call somebody in to finish it. (Tr. 319.) When asked

to elaborate, plaintiff responded: "Washing it and stuff," and said that bending to wash

the side of the car and the wheels aggravated his back. (Tr. 321, 324.) The ALJ accepted

the statements made at the hearing as more truthful because plaintiff had told Dr. Jones

that he was working odd jobs and that he moved cars for automobile auctions through a

temporary employment agency. (See Tr. 117, 204.) The record indicates that the job

moving cars for auction was once a week for four hours and that plaintiff had the job for

two months. (Tr. 117, 322-23.) Further, washing a car is not the same as "working" on

a car, in the sense of, for example, changing the spark plugs, (see Tr. 149 (plaintiff saw

Dr. Jones in June 2004 for increased pain and stiffness in his back after changing spark

plugs in his car)). There exists an inconsistency in plaintiff's statements concerning

---

[5]    The report is dated "3-10-67." (Tr. 103, 110.) However, that date is plaintiff's date
of birth and the List of Exhibits indicated that the date of the exhibit should be March 10,
2005. (Tr. 2.)

whether he mowed the lawn, but the alleged inconsistency in statements relating to working on his car is less than clear and convincing.

The ALJ found that plaintiff's statement that Dr. Gallo wanted to do back surgery was an inconsistency stating, "as already summarized in the medical evidence, Dr. Gallo never recommended surgery and ultimately surgery would not be recommended, further undermining his disability claims." (Tr. 21.) The ALJ's statement is not a fair reflection of the record. A careful review of the record shows that plaintiff presented to Dr. Gallo in April 2005 for surgical consultation. Following examination, Dr. Gallo noted that plaintiff was to have a followup MRI study would follow up with her regarding surgical options. At that time, she noted: "He may be a good candidate for internal fixation with the new flexible fusion system." (Tr. 186.) Dr. Gallo wrote a letter to Dr. Jones on April 11, 2005 to this effect, see supra. (Tr. 195.) Plaintiff returned to Dr. Gallo for followup on April 25, 2005, and she told plaintiff that the next step was provocative discography. (Tr. 183, 219.) However, the record indicates that plaintiff did not have insurance to pay for the procedure. (Tr. 203, 218, 227.) In a Disability Report-Appeal completed by plaintiff and dated April, 20, 2005, plaintiff states: "Dr Gallo wants to do Surgrey [sic] As of 4-21-05 a date has not been set." (Tr. 111.) In a chart note dated April 28, 2005, Dr. Jones states in relevant part:

> [Plaintiff] did see Dr. Gallo who believes that he may need a special disk surgery. Apparently it is a new technique they are now using. He is scheduled to get lumbar diskography. At this point his back really has not gotten any better. He has had no change, and he has had three epidural injections without good effect. He would like to proceed with what Dr. Gallo is recommending. I am in agreement.

23 - REPORT AND RECOMMENDATION

(Tr. 204.) As stated, supra, Dr. Jones indicated in a February 2006 chart note that plaintiff did not have insurance for surgery. (Tr. 203.) On a July 10, 2006, Claimant's Recent Medical Treatment, plaintiff wrote: "Dr. Jones agreed with Dr. Davis + Dr. Gallo I have Degenrative [sic] disease and I need Back Surgery." (Tr. 119.) Plaintiff saw Dr. Gallo in September 2006 and a disco/CT study was to be done. When plaintiff returned to Dr. Gallo in October 2006 following the discogram/CT study, Dr. Gallo told plaintiff that, based on the study, see discussion supra, he was not a good candidate for arthrodesis[6] for pain relief "as he has too many symptomatic levels." She recommended a pain management approach. (Tr. 240.) Clearly, Dr. Gallo was considering surgical options for plaintiff until October 2006, when the discogram/CT study indicated that he would not be a good candidate for surgery. Nowhere in Dr. Gallo's records is there any indication that plaintiff's back condition did not warrant surgical intervention. Accordingly, there was no inconsistency in plaintiff's statements made in April 2005 or July 2006 that Dr. Gallo wanted to do back surgery. This reason given for discrediting plaintiff's testimony is not clear and convincing.

Although not every reason relied on by the ALJ to discount a claimant's credibility is upheld on review, the credibility determination will be sustained if the determination is supported by substantial evidence. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, considering the points which might support discrediting plaintiff's complaints, which are

---

[6] See fn. 3.

weak, the Court cannot say that substantial evidence supports the ALJ's determination to discount plaintiff's allegations. Cf. Carmickle v. Comm'r, Soc. Sec. Admin., ___ F.3d ___, 2008 WL 2841163 (9th Cir. July 24, 2008).

**New evidence  submitted to the Appeals Council**

Additionally, the record includes new evidence by Donna M. Morgan, M.D., and John R. Reichle, M.D., which was submitted to the Appeals Council after the ALJ's decision. (Tr. 7-8, 11.) The Appeals Council considered this evidence and determined that it did not provide a basis for changing the ALJ's decision, and denied review. In the Ninth Circuit, this Court must consider the entire administrative record, including the decision of the ALJ and the additional material submitted to the Appeals Council, in reviewing the Commissioner's finding of not disabled. Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000); Durham v. Apfel, No. Civ. 98-1422-ST, 1999 WL 778243, at *11-*12 (D. Or. Sep. 22, 1999) (considering the entire record including the new evidence, citing Ramirez, 8 F.3d 1449); Vinje v. Apfel, No. Civ. 00-6045-ST, 2001 WL 210188, at *7-*8 (D. Or. Jan. 16, 2001) (same); see Hogan v. Apfel, No. Civ. 00-126-HA, 2001 WL 213751, at *3-*4 (D. Or. Jan. 4, 2001) (citing Ramirez, 8 F.3d 1449).

Dr. Morgan

Plaintiff contends that the Appeals Council rejection of Dr. Morgan's opinion on the ground that her opinion is not supported by any clinical or laboratory findings is not based upon the record. Defendant contends that Dr. Morgan's opinion was speculative and not

sufficient to alter the ALJ's reliance on the treating physicians' findings that plaintiff could perform light work.

Plaintiff underwent an initial consultation with Dr. Morgan on December 28, 2006, on referral from Dr. Gallo for pain management options. Plaintiff's chief complaint was low back and bilateral leg pain. Plaintiff reported that his pain worsened with prolonged sitting, bending, or twisting, and lessened with rest and medications. The McGill Pain Questionnaire (weighted) was completed. On the Oswestry Low Back Pain Disability Questionnaire, plaintiff indicated in pertinent part that his pain intensity was 3/5, fairly severe at the moment; lifting was 4/5, he could lift only very light weights; walking was 2/5, pain prevented him from walking more than ½ mile; sitting was 3/5, pain prevented him from sitting for more than ½ hour; and standing was 3/5, pain prevented him from standing for more than ½ hour. On the Medical Outcomes Short Form-36, the Rand-36 interpretation indicated the following relevant scores: 20 in physical functioning (100 = full functioning), 45 in energy/fatigue (100 = full of energy), and 12.50 in pain (100 = no pain and 0 = intense pain). On physical exam, Dr. Morgan noted "no excessive pain behavior." (Tr. 282.) Plaintiff had a normal tandem gait. Dr. Morgan reviewed the October 2006 CT-lumbar (post discogram), April 2005 MRI-lumbar; the March 2000 MRI-lumbar, and a March 2000 x-ray-lumbar. Dr. Morgan's assessment was multilevel lumbar degenerative disc disease and moderate spinal stenosis. She thought plaintiff might benefit from a physical capacity and vocational rehabilitation evaluation, which might provide options for future employment or confirm his disability. As a problem list, Dr.

Morgan listed the following:  degeneration, lumbar/lumbosacral disc; herniated lumbar disk with radiculopathy; lumbar spinal stenosis; and spondylosis.  Medications were prescribed. (Tr. 280-84.)

On February 26, 2007, Dr. Morgan completed a questionnaire from plaintiff's attorney, seeking her opinion regarding plaintiff's functional capacities and limitations.  In pertinent part, Dr. Morgan responded to the question, "In your opinion, based on the above definition [of sedentary work[7]], would Mr. Dring be capable of a full range of sedentary work?," with, "I have not seen him enough to make this decision.  Plus I am awaiting his full evaluation at PRA [Progressive Rehabilitation Associates].  For the time being I am leaning toward the 'NO' response." (Tr. 269.)  In response to the question, "Would Mr. Dring be able to sustain sedentary work activity on a full-time basis considering an exacerbation of his medical condition?," Dr. Morgan stated:  "Probably Unable to sustain sedentary work." (Tr. 269.)  Dr. Morgan included in her response the comment, "Please feel free to send this again after PRA evaluation completed.  Thanks." (Tr. 268-69.)

_____

[7]  The questionnaire included the following definition:

Sedentary work is defined as work which involves no more than 10 pounds at one time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting a certain amount, walking and standing as necessary in carrying out job duties, jobs are sedentary if walking and standing are required no more than two hours in an eight hour day and the other sedentary criteria are met.

In addition, a person must be capable of sustaining the full range of the activities on a full-time basis without excessive absences or breaks beyond the normal time allowances of 15 minutes each in the morning and in the afternoon and a 30-60 minute lunch break.  Excessive absences is defined as absences greater than two days per month on average.

(Tr. 268-69.)

In the Notice of Appeals Council Action, the Notice states: "The Appeals Council finds that the Pain Consultant Assessment from Donna M. Morgan, M.D. dated February 7, 2007, is not supported because she did not provide any clinical or laboratory findings to support her opinion that the claimant was unable to sustain sedentary work." (Tr. 8.) The record indicates that Dr. Morgan's medical records from January 31, 2005, through January 25, 2007, were before the Appeals Council. (Tr. 11.) Here, it is clear that Dr. Morgan evaluated plaintiff and rendered her opinion after having reviewed testing results, observing plaintiff and conducting a physical examination, and by reference to MRI and CT scans and an x-ray. Moreover, the Ninth Circuit has found that a physician need not support his or her findings with objective laboratory findings; subjective medically acceptable clinical diagnoses are sufficient. Rodriguez, 876 F.2d at 762-63; Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984); see Shore v. Callahan, 977 F. Supp. 1075, 1079 (D. Or. 1997).

Dr. Reichle

Plaintiff contends that the Appeals Council's failure to mention the opinion of Dr. Reichle, an examining physician, is error. Defendant contends that any error by the Appeals Council in not discussing Dr. Reichle's report his harmless since, although acknowledging that plaintiff had functional limitations, Dr. Reichle recommended a pain program, physical activity, and vocational rehabilitation.

Plaintiff underwent a pain center evaluation-medical consultation at PRA by Dr. Reichle on March 8, 2007.[8] Plaintiff described aching, stabbing, pain in the lower lumbar midline, extending into the right buttocks and down to the foot; he had pins and needles and numbness in both feet, greater on the right; numbness over the right medial knee, extending around to the dorsum right foot; and some stabbing, aching discomfort in the next. On average his pain was at 7/10. On physical examination, Dr. Reichle noted that plaintiff had some slow, guarded movements but otherwise there was no significant pain behavior. Other than slightly hunched forward shoulders, plaintiff's had otherwise a reasonably normal posture and gait; and he had a normal heel and toe stance and a normal squat. Spinal examination showed mild scoliosis in the lower lumbar area. His range of motion of the lumbar spine was: flexion 30 degrees, extension 8 degrees, tilting to the right 16 degrees and left 18 degrees, and no radicular component or significant pain behavior was noted. Plaintiff had a negative sitting straight leg raise. The cervical spine showed a normal full range of motion with negative Spurling sign. On neurological examination, plaintiff demonstrated a subtle decreased sensation to fine touch over the right medial knee, extending down to the dorsum of the right foot. Plaintiff had a normal tandem walk. As to functional assessment, Dr. Reichle stated that active range of motion of the hips showed 120 degrees flexion bilaterally, 10 degrees internal rotation, and 30 degrees external rotation. Range of motion of the cervical spine appeared fully intact and

---

[8]    On that same date, plaintiff underwent a psychological consultation with E. Ray Tatyrek, Ph.D., at PRA. (Tr. 256-61.)

symmetric. The paraspinal muscles were more tender on the right than the left. In this functional assessment section of the report, Dr. Reichle states: "The patient complained of low back discomfort with prolonged sitting and standing." (Tr. 266.)  Dr. Reichle's diagnoses were: "1. Degenerative disease of the lumbar spine. Herniated lumbar disc without radiculopathy. Lumbar spinal stenosis and spondylosis. 2. Chronic low back pain with right lower extremity pain and numbness." (Tr. 266.)  Dr. Reichle stated: "The patient clearly appears motivated to return to the workforce but his symptoms have left him with functional limitations." (Tr. 266). Dr. Reichle recommended a multidisciplinary pain management program to include physical, vocational, and psychological components; or psychological services and a regular physical activity; and vocational services. (Tr. 262-67.)

Other than stating that the additional evidence submitted to the Council did not provide a basis for changing the ALJ's decision, the Appeals Council does not mention Dr. Reichle's report.   Dr. Reichle clearly states that plaintiff has functional limitations. However, no reason specific to Dr. Reichle was given to disregard his opinion.

**Conclusion**

Plaintiff contends that the Court should credit his complaints and the physicians' opinions that he cannot work and direct payment of benefits.

The determination of  whether to remand a case for additional proceedings, or to award benefits is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing Stone v. Heckler, 761 F.2d 530 (9th Cir. 1985)).  Remand is

appropriate where further proceedings would be likely to clear up defects in the administrative proceedings, unless the new proceedings would simply serve to delay the receipt of benefits and are unlikely to add to the existing findings.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 976 (9th Cir. 2000).

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony.  See Smolen, 80 F.3d at 1292 (claimant's subjective symptom testimony, physicians' opinions, and lay testimony) (and cases cited); Lester, 81 F.3d at 834 (treating and examining physicians' opinions). However, in Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine.  (Citing Dodrill, 12 F.3d 915; Nguyen, 100 F.3d 1462; Byrnes v. Shalala, 60 F.3d 639 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991), in which the courts remanded for credibility findings).

Here, it is not clear from any of plaintiff's physicians that plaintiff is considered to be disabled by his back condition and unable to work.  Treating physicians, Brian G. Jones, M.D., and Paul G. Curtin, M.D., gave opinions that plaintiff was capable of light exertional work.  (Tr. 144, 204-08.)  However, these opinions were given on January 31, 2005, February 28, 2005, and March 28, 2005, respectively.  (Tr. 144, 205, 207.)  The record, however, is not clear as to the opinions of plaintiff's most recent treating physicians, Dr. Gallo (Tr. 230, 240) and Dr. Morgan (Tr. 268-69).

On this record, the Court exercises its discretion and remands for further proceedings. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053-54, 1056-57 (9th Cir. 2006); Connett, 340 F.3d at 876. The ALJ on remand, in order to develop a fair record, shall clarify the opinions of Dr. Gallo and Dr. Morgan, and shall consider the report of Dr. Reichle in which he, in part, found that plaintiff had "functional limitations" (Tr. 266).

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the  Commissioner be reversed and the matter remanded for further administrative proceedings, and that judgment be entered accordingly.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by August 29, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

//

32 - REPORT AND RECOMMENDATION

DATED this _____ day of August, 2008.


_____
MARK D. CLARKE
United States Magistrate Judge